Jeannine GRAHAM, Appellant,

v.

Jerry GRAHAM, Appellee.

No. 6–92–016–CV.

Court of Appeals of Texas,
Texarkana.

Aug. 11, 1992.

Jack H. Welge, Jr., Longview, for appellant.

Ross A. Skolnick, Adams, King & Skolnick, Ebb B. Mobley, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Jeannine Graham appeals from a divorce decree that allowed Jerry Graham reimbursement for separate funds used to retire a community debt. She asserts that the trial court abused its discretion in ordering reimbursement and that there is no evidence to support the award. The sole issue is whether the evidence supports the trial court's finding that the use of separate funds to pay the community debt did not constitute a gift to Jeannine Graham.

Jeannine and Jerry Graham were married on February 11, 1971. At that time, Jerry Graham owned a house located on Auburn Street, which he had received through a previous divorce. The parties lived in that house for twelve-and-a-half years. In 1983, they purchased a home on Fleetwood Drive. They assumed an existing loan, obtained additional loans from Kilgore Federal Savings & Loan Association and Longview Container Credit Union, and used some community cash to buy the house. They took title in both their names. Jerry Graham sold the house on Auburn Street about a month after they purchased the home on Fleetwood Drive. The settlement papers and check for the Auburn house named both parties. The settlement check of about $31,950.00 was used to pay the notes on the Fleetwood Drive home.

The trial court found that: the Auburn house was Jerry Graham's separate property; there was no evidence or insufficient evidence that he intended to make a gift to Jeannine Graham of any interest in that property; the proceeds from the Auburn house sale were Jerry Graham's separate property; the Fleetwood house was acquired one month before the Auburn house was sold; the proceeds from the Auburn house were entirely applied to the payment of the notes on the Fleetwood house; $27,950.00 was traced to the separate property proceeds of the Auburn house and reimbursed to Jerry Graham; the community estate enhanced the value of the Auburn home by $4,000.00; the community estate was adequately compensated for the value of its time and effort expended to enhance the Auburn property; community funds reduced the principal of the debt on the Auburn property by $4,000.00; the court considered offsetting benefits to the community in determining the community's claim for reimbursement; any increase in the value of the Auburn property was due solely to market conditions and not by community contribution; the community estate received a quid pro quo for its contributions toward the Auburn property; the evidence did not support a finding that one half of the proceeds of the Auburn property was the separate property of Jeannine Graham; Jeannine Graham did not plead for any reimbursement to the community; and Jerry Graham should be reimbursed $27,950.00. In additional findings of fact and conclusions of law, the court found that the Fleetwood Drive house was acquired during marriage; that the settlement check from the Auburn house was received by Jerry Graham in the form of a check made out to both Jerry and Jeannine Graham; and that the Fleetwood Drive property was community property.

In her first point of error, Jeannine Graham asserts that the trial court abused its discretion in ordering reimbursement. She contends that since the closing documents from the sale of the Auburn property contained both parties' names and the funds were invested in a community property residence that was titled in both names, a presumption arose that Jerry Graham made a gift to her of one half the proceeds of the separate property home.

■ Separate property payment of a community debt creates a prima facie right to reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 196 (Tex.1988); *Jones v. Jones*, 804 S.W.2d 623, 626 (Tex.App.—Texarkana 1991, no writ). Reimbursement is an equitable right and its application lies within the broad discretion of the trial court. *Penick v. Penick*, 783 S.W.2d at 198; *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); *Jones v. Jones*, 804 S.W.2d at 626. Gifts, however, may not be the basis of a

reimbursement claim. *Jones v. Jones*, 804 S.W.2d at 626.

■■■ Where one spouse uses separate property to pay for property acquired during the marriage and takes title to the property in the name of both spouses, a presumption arises that a gift of one half the separate funds to the other named spouse was intended. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex.1975). In this case, however, the proceeds from the sale of the separate property house were not used in the *acquisition* of the community property residence, but in paying a debt against the community residence. The Fleetwood house was acquired during the marriage and solely with community funds and community credit. *See Cockerham v. Cockerham*, 527 S.W.2d at 171; *Broussard v. Tian*, 156 Tex. 371, 295 S.W.2d 405 (1956). Jeannine Graham argues that the presumption should arise here because there was an agreement or understanding between her and Jerry Graham that the separate property proceeds would be applied to the community property house. Even if such an agreement would be sufficient to effectively change the *payment of a debt* into the *acquisition of property*, there is not sufficient evidence in the record that would compel the trial court to find there was such an agreement. Moreover, while Jerry Graham did testify that he planned to use the proceeds from the Auburn house to retire the community debts, that does not compel a finding that he intended to make a gift of any of the funds.

■■■ Jerry Graham established that the Auburn house was his separate property. The record shows that the proceeds from its sale were used to retire community obligations on a house purchased during marriage. The evidence thus supports reimbursement, as the value of the community estate was enhanced to the extent its debts were extinguished. *See Hilton v. Hilton*, 678 S.W.2d 645, 648 (Tex.App.—Houston [14th Dist.] 1984, no writ); *see also, Hor-*

lock v. Horlock, 533 S.W.2d 52, 56–58 (Tex. Civ.App.—Houston [14th Dist.] 1975, writ dism'd); Joseph McKnight, Comment, *Texas Family Code Symposium*, 21 TEX.TECH. L.REV. 905, 1016–17 (1990).

■■■ Jeannine Graham also contends that the trial court abused its discretion in ordering reimbursement because the proceeds of the Auburn house were a gift of separate funds to the marriage partners for community living. She contends that the community did not have the funds necessary to pay all the obligations incurred in purchasing the community residence and therefore the use of the separate property proceeds to pay those notes gave rise to a gift presumption.

Spouses are obligated to furnish support for community living expenses using separate property, if necessary. *In re Marriage of Long*, 542 S.W.2d 712, 717 (Tex. Civ.App.—Texarkana 1976, no writ); TEX. FAM.CODE ANN. § 4.02 (Vernon Supp.1992). Separate property expended for community living is deemed to be a gift for the benefit of the well-being and use of the community estate. *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676 (1953). However, no cases have applied this rule to a situation where separate funds have been used to retire a community obligation in a lump sum payment.[1]

Contentions similar to this were rejected by the court in *Hilton*. It was contended there that separate property funds used to retire community debts incurred for living expenses, taxes and interest were not reimbursable. The court stated:

> It is immaterial how the funds obtained from the incurrence of the community debt were spent. It is clear that the community estate benefited from the use of appellee's separate property to extinguish the community debt.

*Hilton v. Hilton*, 678 S.W.2d at 648.

Jerry Graham proved that the proceeds from the sale of his separate property were used to retire the corpus of a community

---

1. The question of the use separate funds to make monthly mortgage payments on commu-

nity debts is not before this court.

debt. There was no evidence that any of the funds were used to pay normal living expenses. The use of separate property to retire a community debt gives rise to reimbursement regardless of the purpose of the debt. Additionally, Jerry Graham testified that the purpose of this transaction was to minimize the community's monthly payments, rather than to make a gift to the community. This is some evidence to support the trial court's findings.

In view of the equitable nature of reimbursement, *Vallone v. Vallone*, 644 S.W.2d 455, and the broad discretion given a trial court in making a division of the property, *Penick v. Penick*, 783 S.W.2d at 198; TEX. FAM.CODE ANN. § 3.63 (Vernon Supp.1992), we hold that the trial court's reimbursement order in this case was not an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–44 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

The judgment of the trial court is affirmed.